UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MICHAEL HEARN,

    Plaintiff,

v.            07-1235

ELDON KENNELL, RICHARD RUNYON,
ROBERT R. GRIFFIN, EDDIE JONES, and
ROGER E. WALKER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the court are the defendants, ELDON KENNELL, RICHARD RUNYON, ROBERT R. GRIFFIN, EDDIE JONES, and ROGER E. WALKER's summary judgement motion [31] and the plaintiff's response [34].

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that

would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

The plaintiff, a state prisoner, filed a complaint pursuant to 42 U.S.C. §1983, alleging that the defendants violated his rights under the First Amendment, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and violated his equal protection rights under the Fourteenth Amendment.  The plaintiff claims that the defendants violated his First Amendment rights and his rights under RLUIPA by (1) limiting his ability to wear his kufi; (2) denying him the ability to purchase "non-flammable" scented prayer oils; and (3) denying him a Halal diet.  Specifically, this plaintiff wants Halal certified meat.  Moreover, the plaintiff claims that the defendants violated the Equal Protection Clause of the Fourteenth Amendment by not providing the plaintiff with a Halal diet from My Own Meals, Inc., while providing a Halal diet from My Own Meals, Inc., to Jewish inmates.  The defendants deny that they violated the plaintiff's constitutional rights under the First Amendment, RLUIPA or th Fourteenth Amendment.

## Undisputed Material Facts[1]

1. The plaintiff, Michael Hearn, B-82910, is currently incarcerated at Pontiac Correctional Center.
2. The plaintiff has been incarcerated at Pontiac Correctional Center at all times relevant to his Complaint.
3. At all times relevant to his Complaint, the plaintiff's religious designation has been Islam.
4. According to Departmental Rules, the wearing of religious headgear, including but not limited to fezzes, kufis, and yarmulkes, is limited only to the committed person's immediate sleeping area during prayer and to the area of religious service while the service is being held. (Defendants' Exhibit A, Affidavit of Marcus Hardy).
5. Limitations regarding the wearing of religious headgear are instituted for the safety and security of the institution. (Defendants' Exhibit A).
6. Safety and security concerns include but are not limited to 1) the potential ability for an inmate to use the religious headgear in an attempt to hide his identity; and 2) the need to

---

[1]The defendant's exhibit can be found attached to his summary judgment motion.  The plaintiff's exhibit can be found attached to his response.  The plaintiff disputes many of the facts in his reply [34], however, either he either improperly denies some facts and/or does not present any admissible evidence to refute these statements, or he incorrectly asserts that they are legal conclusions.

2

      deter and limit the influence of security threat groups. (Defendants' Exhibit A).
7.   According to Departmental Rules, inmates are not allowed to posses "nonflammable" scented prayer oils due to concerns for the safety and security of the institution. Such concerns include but are not limited to the potential use of the oil as a lubricant[2]. (Defendants' Exhibit A, Plaintiff's Exhibit A1 ).
8.   Pork and pork by-products are not served at Pontiac Correctional Center[3]. (Defendants' Exhibit B, Affidavit of Richard Runyon).
9.   Muslim inmates not wanting to receive the general diet provided at the institution may request and receive either the vegan or lacto-ovo diet[4]. (Defendants' Exhibit B).
10.   Due to budgetary restraints, the Illinois Department of Corrections does not provide a Halal diet. (Defendants' Exhibit B).
11.   Pontiac Correctional Center purchases pre-packaged meals from My Own Meals. Inc. These meals are purchased to provide a Kosher diet. (Defendants' Exhibit B).
12.   The institution purchases eight varieties of the meals. Six of the purchased varieties contain a meat entree and are only certified as Kosher. These meat meals are not Halal certified. The remaining two varieties contain vegetarian entrees and are dual certified

---

[2] The plaintiff asserts that the defendant, Kennell's September 21, 2005 letter (see the plaintiff's Exhibit A3) advising him that prayer oil would not be allowed because it is not necessary for his religion is contrary to Kennell's November 16, 2005 letter (see plaintiff's Exhibit A1) advising him that prayer oils or scented oils were sold on the commissary, but they are banned because they pose a fire hazard. The plaintiff also asserts that on another occasion, Kennel asserted that his request was denied because of a security issue (see plaintiff's complaint, Exhibit A001-004) and on another occasion he referred the plaintiff's request to the program warden. Kennell's explanations are not contradictory. His explanations are only expounded and clarified. Further, a fire hazard is a security issue. Further, passing the plaintiff's request to the program warden for his consideration is not a contradiction. Kennell's statements do not raise a genuine issue of material fact.

[3] The court takes judicial notice that the Islam religion requires that Muslims abstain from pork or pork-by-products.

[4] The plaintiff adds to this fact that "[t]he Legal Department instructed Kennell to provide a vegan diet to the plaintiff, but (as of the date he filed his response) he never received the vegan diet. The plaintiff points to his affidavit which is self serving (see plaintiff's affidavit, Exhibit A) and he also points to Exhibit B (an August 26, 2005 letter rom Kennell advising the plaintiff that he went on the special religious privilege vegan diet on October 19, 2004; he asked to be taken off on January 25, 2005 and he was taken off; then on February 23, 2005, he asked to be reinstated on the special religion privilege diet and his request was granted; then on August 10, 2005, the plaintiff asked to be taken off the diet once again and his request was granted. However, the plaintiff's request to Kennell was for a "halal" diet, not a vegan diet. The fact that the Legal Department instructed Kennel to provide a vegan diet, specially since the plaintiff had not requested one at that point does not amount to a genuine issue of material fact.

3

by the company as being both Kosher and Halal. (Defendants' Exhibit B).
13. Defendant Walker is the Director of the Illinois Department of Corrections. (Complaint, ¶ 22).
14. The plaintiff sued Defendant Walker because of "Walker's" denial of the plaintiff's appeal to the Administrative Review Board for his grievance regarding his kufi, his prayer oils, and a Halal diet. (Complaint, ¶¶ 22, 23).
15. Defendant Walker did not personally review any grievances filed by the plaintiff. Ms. Anderson's is the manager of the Office of Inmate issue for IDOC. As manager, her duties include reviewing grievances filed by IDOC inmates. (Defendants' Exhibit C, Affidavit of Terri Anderson). A review of the grievance at issue shows that the initials TA indicates that Terri Anderson signed Walker's name. *See* Plaintiff's Exhibit C0001 attached to the complaint.

### Discussion and Conclusion

The plaintiff's claim for relief was brought pursuant to 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988). It is undisputed that the defendants acted under the color of state law while working within the Illinois Department of Corrections.

In order to state a cognizable Section 1983 claim, a plaintiff must allege that the defendant had some *personal involvement* in the deprivation of the plaintiff's constitutional right. *McDonald v. Illinois,* 557 F. 2d 596, 602 (7th Cir. 1977)(emphasis added). However, ". . . [a] defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of Section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Crowder v. Lash*, 687 996, 105 (1982)). *See Kentucky v. Graham,* 473 U.S. 159 (1985). Essentially, a plaintiff can state a claim for relief under Section 1983 against a defendant that has a realistic opportunity to step in and prevent the violation of the plaintiff's right, but fails to do so. *Miller*, 220 F.3d at 495.

In this case, while the plaintiff has shown, as a matter of law, that the defendants, Kennell. Runyon, Griffin, and Jones had the requisite personal involvement for liability under §1983, he has failed to show the requisite personal involvement of the defendant Walker. To establish personal involvement, it is required that there be *some* causal connection or affirmative link between the action complained about and the official sued. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis added). The defendant Walker did not personally review any of the plaintiff's grievances.

Further, the plaintiff has not shown as a matter of law that any of the defendants, including Walker, violated his first amendment rights. The Supreme Court has held that "the

fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). A prisoner is entitled to practice his or her religion as long as the practice does not unduly burden the institution. *Richards v. White*, 957 F.2d 471, 474 (7th Cir.1992). An inmate's right to exercise his religious beliefs is balanced against the legitimate goals of the institution. *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). To constitute a violation of the First Amendment, the government must place a substantial burden on the observation of a central religious belief or practice. *Wisconsin v. Yoder*, 406 U.S. 205, 220-221 (1972). If a plaintiff is successful at crossing this hurdle, the government must then show a compelling interest justifies the burden. *Yoder*, 406 U.S. at 220-221.

The Supreme Court has established that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Accordingly, restrictions that infringe upon an inmate's exercise of religion will be upheld if they are reasonably related to a legitimate penological interest. *O'Lone*, 482 U.S. at 349. Relevant factors include: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest; (2) whether there are other means of exercising the right in question for prisoners; (3) the impact accommodating the claimed right would have on guards, other inmates, and prison resources; and (4) the availability of obvious and easy alternatives to the regulation. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). Legitimate penological demands include security and economic concerns. *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). The inmate has the burden of disproving the validity of a challenged prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Within the state penal system context, federal courts accord deference to the decisions of prison administrators. *Turner*, 482 U.S. at 85.

First, upon a review of the undisputed facts before this case, there is no indication that the plaintiff's religion requires prayer oil, religious headgear or Halal certified meat. On that basis alone, the defendants are entitled to summary judgment on each of the plaintiff's claims. Nevertheless, the court considers the plaintiff's claims as following:

In this case, the plaintiff's First Amendment right to practice his religion was not violated by the defendants. Neither the limitation on religious headgear nor the restriction of prayer oils substantially burdens the exercise of the plaintiff's religion. The plaintiff can still pray and participate in his religious activities and services. Moreover, the regulations are rationally related to concerns for the safety and security of the institution. With regard to religious headgear, security concerns include, *inter alia*, the potential to hide one's identity and the need to deter and limit the influence of security threat groups. The plaintiff argues that regulation with regard to religious headgear is not reasonable because navy and baseball caps are worn in areas of the prison where the kufi is not allowed. However, the plaintiff cannot make this assertion in his argument because he did not list this as an undisputed fact. Similarly, the restriction of prayer oils was instituted due to the ability of an inmate to use the oil (flammable

and nonflammable) as a lubricant and because such oils are flammable. Accordingly, not only do the above regulations fail to substantially burden the plaintiff's exercise of religion, but they are uniquely related to one of the most legitimate penological interests: the safety and security of the institution.

The court finds that the plaintiff's claim regarding the defendants' failure to provide a Halal diet is without merit. The general prison diet offered at Pontiac Correctional Center does not contain any pork or pork by-products and this fact is not disputed by the plaintiff. Moreover, any Muslim inmate that decides that he does not want the general diet or that the general diet does not comply with the dietary requirements of his religion may choose to receive the vegan or lacto-ovo diet. As such, the defendants have done nothing to affirmatively prevent the plaintiff from practicing his religious beliefs. Although the plaintiff was not provided with a Halal diet, he was given multiple alternatives and was not forced to consume any foods that he believed were in violation of his faith. Further, there are no facts before this court that indicate the plaintiff's religion requires a Halal diet. Therefore, the defendants have not substantially burdened the plaintiff's religion.

The court also finds that the plaintiff cannot demonstrate, as a matter of law, that the defendants violated the religious land use and institutionalized persons act. The Religious Land Use and Institutional Persons Act (RLUIPA), provides that institutions receiving federal financial assistance may not "impose a substantial burden on the religious exercise" of an institutionalized person unless it is the "least restrictive means" of furthering "a compelling governmental interest." 42 U.S.C.§ 2000cc-1(a) (West 2007). The Supreme Court held that religious accommodations cannot override an institution's other significant interests. *Cutter v. Wilkinson,* 125 S.Ct. 2113, 2122 (2005). RLUIPA is to be applied "in an appropriately balanced way, with particular sensitivity to security concerns." *Id*. at 2123. The Court stressed that deference is due to institutional officials' experience and expertise in the area of prison security. *Id*. at 2123-34.

The plaintiff has failed to state a claim under RLUIPA because RLUIPA only affords relief when there has been a "substantial burden" on one's right to exercise their religion. While the statute itself does not define "substantial burden," the Seventh Circuit has clarified that a "substantial burden" under RLUIPA is one that "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 761 (2003).

In this case, the plaintiff cannot demonstrate that the defendants' regulations regarding religious items and refusal to provide a Halal diet substantially burdened the plaintiff's right to exercise his religion. As stated above, the defendants did not affirmatively prevent or interfere with the plaintiff's ability to engage in his religious activities. The plaintiff could continue to pray and participate in religious services. The plaintiff was allowed to receive either the general prison diet or the vegan or lacto-ovo diet. He simply did not have the option of receiving a Halal diet. The defendants did not force the plaintiff to consume any foods that were in violation of his religious tenets. Further, as already stated, there are no facts before this court that indicate

the plaintiff's religion required religious headgear, prayer oil or a Halal diet.  Therefore, in no way did the defendants' actions cause the exercise of the plaintiff's religion to be effectively impracticable.  Accordingly, summary judgment is warranted.

The plaintiff cannot show, as a matter of law that the defendant's violated the equal protection clause.  In order for a plaintiff to prevail on an equal protection claim under 42 U.S.C. §1983, he must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an undefinable group of individuals. *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir. 1983). The plaintiff must further show that any deprivation was based on an unjustifiable standard such as race, religion, or other arbitrary classification.  *Vukandinovich v. Bartels*, 853 F.2d 1387, 1392 (7th Cir., 1988); *Government of the Virgin Island v. Harrigan*, 791 F.2d 34, 36 (3rd Cir., 1988).  Simply receiving different or unfair treatment is not enough to raise an equal protection violation.  *Huebschen,* at 1171.  The complaint must allege the treatment received was intentional and based on the plaintiff being a member of an identifiable class to the exclusion of all others.  *Huebschen*, at 1171.

In this case, the plaintiff claims that the defendants have violated the dictates of equal protection by providing the Jewish inmates with pre-packaged meals purchased from My Own Meals, Inc.  Specifically, the plaintiff's claim is that his equal protection rights were violated because he was denied Halal meat while Jewish inmates were provided Kosher meat. The plaintiff's claim is based upon the premise that the meals purchased from My Own Meals, Inc., are Halal-certified.  While two of the entrees are Halal certified, the other six meals are not Halal-certified.  The My Own Meals entrees are purchased to provide a Kosher diet to the Jewish inmates.  Moreover, the two entrees that are Halal-certified are simply vegetarian meals.  It is unclear how providing the plaintiff with two pre-packaged vegetarian entrees would accommodate his religious dietary restrictions any more than the provision of either the vegan or lacto-ovo diet.  Moreover, the plaintiff is not similarly situated to the Jewish inmates. The dietary restrictions of Muslims are not the same as those of the Kosher diet for Jewish inmates. Accordingly, different steps must be taken to accommodate the various dietary restrictions. Finally, there are no facts before this court that show that the plaintiff's religion requires him to have Halal certified meat.  The plaintiff is not being intentionally discriminated against because of his religion, but rather accommodations are simply being made for multiple religions.  Thus, the plaintiff cannot establish a violation of the Equal Protection Clause and summary judgment is warranted.

 Based on the foregoing it is ordered:

1.  IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [31] is granted pursuant to Fed. R. Civ. P. Rule 56(c).  The clerk of the court is directed to

    enter judgment at the close of this case against the plaintiff pursuant to Fed. R. Civ. P. Rule 56(c).
2.  If the plaintiff wishes to appeal this decision, he must file a notice of appeal with this

court within 30 days of entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28U.S.C. 1915(g).

Entered this 22nd day of October 2009.

s/ Harold A. Baker

_____
Harold A. Baker
United States District Judge